USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/10/2018___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                          :

KT CORPORATION, et al.,                    :
                                          :

                      Petitioners,   :       17 Civ. 7859 (LGS)
                                          :

              -against-                :       **OPINION AND ORDER**
                                         :

ABS HOLDINGS, LTD., et al.,           :
                                          :

                     Respondents. :
-------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

This case arises out of a Partial Arbitration Award (the "Award") issued in a dispute between Petitioners KT Corporation and KTSAT Corporation (collectively, "KT") and Respondents Asia Broadcast Satellite Global, Ltd. and Asia Broadcast Satellite Holdings, Ltd. (collectively, "ABS") over title to a geostationary satellite. KT petitions to vacate the Award and seeks remand of this case to the International Chamber of Commerce. KT cross-petitions to confirm the Award and moves to recoup attorneys' fees and costs. For the reasons stated below, KT's Petition to vacate is denied; and ABS's cross-petition to confirm and its motion for attorneys' fees and costs is granted.

## I.     BACKGROUND

### A.     The Purchase and Operation Agreements and the MSIP Order

KT is a Korean satellite communications provider that manages the Korean satellite fleet. ABS is a satellite communications provider that is incorporated in Bermuda and based in Hong Kong. In 2010, ABS and KT entered into two agreements: (1) a Purchase Agreement whereby KT sold to ABS a geostationary satellite, then known as KOREASAT-3 ("KS-3"), and related baseband equipment; and (2) an Operations Agreement, which provided that KT would operate

KS-3 on behalf of ABS (collectively, "Agreements"). Both agreements contain a mandatory

arbitration clause, and a choice of law provision selecting New York law without giving effect to

its conflict of law principles.

The Agreements contain various provisions related to governmental authorizations and

approvals related to the sale and operation of KS-3. The Purchase Agreement states that KT is

obligated to "obtain all necessary licenses, consents and approvals for the sale of the Satellite and

the Baseband Equipment." KT is also "responsible for obtaining and maintaining . . . all

governmental and regulatory licenses and authorizations required" to perform its obligations

under the Purchase Agreement. Title would transfer from KT to ABS only if "any necessary

approvals and licenses, including the U.S. State Department approval and the approvals and

consents required for and during the Orbital Slot Use Period, have been received."

The parties received the U.S. State Department approval in 2010. In 2011, KT delivered

KS-3 to ABS in exchange for $500,000. KT also delivered Bills of Sale for KS-3 and the related

baseboard equipment.

On December 18, 2013, two years after the transaction closed, Korea's Ministry of

Science, ICT and Future Planning ("MSIP") issued an order (the "MSIP Order") that, among

other things, declared the Purchase Agreement "null and void and in violation of the mandatory

law (Foreign Trade Act)" ("FTA") because KT had failed to obtain an FTA permit; cancelled

KT's allocation of the spectrum for the KT Band; and directed KT to return the satellite to its

original operating condition. In 2016, the Seoul Central District Court entered a criminal

judgment against key KT executives who had been involved in the sale of KS-3.

B.      The Arbitration Award

2

The parties submitted the issue of title to KS-3 for arbitration. Neither party questioned the tribunal's authority to issue a determination on the title issue. The arbitral proceedings were governed by New York law, seated in New York, and presided over by a three-member tribunal. The tribunal, by majority, issued the Award on the sole issue of title, finding in favor of ABS. One of the three tribunal members dissented.

In a letter dated March 14, 2016, KT explained to ABS that it had determined not to appeal the MSIP Order, stating "[W]e are of the view that the validity of the Purchase Contract is a subject matter to be conclusively determined in the arbitration proceedings between [KT] and ABS, and not in any lawsuit filed by [KT] with an administrative court in Korea." Similarly, the Award states, "The Parties agreed in their written submissions that the Arbitral Tribunal has jurisdiction to consider claims alleging breaches of the [Agreements], including claims for ownership of the Satellite and Baseband Equipment."

The 116-page Award is briefly summarized as follows: the panel, by majority,[1] held that title transferred to ABS in 2011 when all the contractual conditions precedent to transfer were satisfied, and that no existing Korean mandatory law was violated when title passed to ABS. Specifically, the conditions satisfied in 2011 included the following: KT delivered KS-3 to ABS; ABS paid the purchase price of $500,000; U.S. regulatory approval for the sale of KS-3 as a U.S. export had been secured in 2010; KT represented that it had obtained all necessary approvals; and KT delivered to ABS, and ABS formally accepted, two warranty Bills of Sale, which effected the transfer of title to KS-3. No Korean mandatory law was violated when title passed in 2011 because (1) no Korean regulatory authority had questioned or required an FTA permit of the prior purchase and sale between ABS and KT of the KS-1 and KS-2 satellites, (2) no Korean

---

[1] All further references in this Opinion to the "Panel" refer to the panel acting by majority.

authority mentioned any approval requirement in 2011 when the highly publicized transfer of KS-3 occurred, (3) the parties were unaware of any requirement for Korean approval in 2011 and (4) the MSIP Order was not issued until two years after title to KS-3 had passed. The Award observed: "It cannot forever be open to a government agency to discovery new 'mandatory rules' . . . and invoke them long after the fact as a basis for invalidating a contract already fulfilled by the parties . . . thereby rendering any such agreement illusory." The Award further explained, "[T]he way to understand this set of facts as a matter of law is to view the FTA export permit requirement as a new rule, which was not the law when the Purchase Contract entered into force, or when the contractually required conditions for passage of title to ABS were all met . . . ."

The Award (1) declared that ABS holds title to, and thus owns, KS-3 and the related baseband equipment, (2) ordered KT not to interfere with the ongoing operation of KS-3 and (3) ordered KT to deliver to ABS the related baseband equipment and all associated flight data related to the operation of KS-3.

## II.    STANDARD

The parties cross-petition to vacate or confirm the Award pursuant to the Inter-American Convention on International Commercial Arbitration ("Inter-American Convention" or "Convention") and the Federal Arbitration Act ("FAA"). Ordinarily, confirmation of an arbitration decision is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 132 (2d Cir. 2015). "A court's review of an arbitration award is . . . severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *United Bhd. of Carpenters & Joiners of Am. v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 274–75 (2d Cir. 2015). "The arbitrator's rationale for an

award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks omitted).

The Convention provides limited grounds for refusing confirmation of an award, including that (1) "the decision concerns a dispute not envisaged in the agreement between the parties to submit to arbitration," (2) "the arbitration procedure has not been carried out in accordance with the terms of the agreement signed by the parties" and (3) "the recognition or execution of the decision would be contrary to the public policy" of the State in which recognition and execution is requested. Inter-American Convention, Art. V(1)(c)–(d), V(2)(b). The FAA expressly incorporates the terms of the Convention. *See* 9 U.S.C. § 301.

The Convention does not articulate a basis for vacating arbitration awards, but a court applying the Convention may vacate an arbitration award based on the grounds provided in the FAA. *PDV Sweeny, Inc. v. ConocoPhillips Co.*, No. 14 Civ. 5183, 2015 WL 5144023, at *6 (S.D.N.Y. Sept. 1, 2015), *aff'd*, 670 F. App'x 23 (2d Cir. 2016) (summary order); *cf. Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 45–46 (2d Cir. 1994) ("The Inter-American Convention incorporates the FAA's terms unless they are in conflict with the Inter-American Convention's terms . . . . Since the Inter-American Convention is silent as to the modification of an award, the court's authority to modify an award pursuant to § 11 [of the FAA] is not in conflict with the express terms of the Inter-American Convention."). Under Section 10 of the FAA, an arbitration award may be vacated, as relevant here, when "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

In addition to the statutory provisions, an award "may be vacated when an arbitrator has exhibited a manifest disregard of the law." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011) (internal quotation marks and citation omitted). This doctrine requires more than "error or misunderstanding with respect to the law." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004). An arbitration award should be confirmed as long as there is "a barely colorable justification" for the award. *Gottdiener*, 462 F.3d at 110. "A motion to vacate filed in a federal court is not an occasion for de novo review of an arbitral award." *Wallace*, 378 F.3d at 189.

The party seeking to "vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011). Similarly, the party opposing confirmation of an arbitral award has the burden of proving that a defense applies. *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009).

## III. DISCUSSION

### A. Petition to Vacate the Award

The Panel's factual findings and legal conclusions that title to KS-3 passed to ABS in 2011 are largely undisputed. The sole issue, in substance, is whether KT has sustained its burden to show that the Panel lacked any colorable justification for refusing to apply the MSIP Order retroactively to reverse the sale of the satellite, which had occurred two years before the MSIP Order. For the reasons stated in the Award and summarized above, the Award easily meets the standard of having "any colorable justification." *Gottdiener*, 462 F.3d at 110.

KT asserts two grounds as a basis for vacating the Award: [2] (1) the Panel exceeded its authority by holding that the MSIP Order was unauthorized and unconstitutional, and (2) the Panel acted in manifest disregard of the law by failing to recognize mandatory Korean law, and disregarding New York law concerning transfer of title and illegal contracts. For the reasons explained below, KT has failed to carry its significant burden of showing that any valid basis exists to vacate the Award.

## 1. Exceeding Authority

Section 10(a)(4) of the FAA allows for vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).[3] Applying that standard, the Supreme Court has held that "[i]t is not enough for petitioners to show that the panel committed an error -- or even a serious error. It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (internal quotation marks and citations omitted; alterations in original). An award will not be vacated as long as the panel "is even arguably construing or applying the contract and acting within the scope of [its] authority." *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000).

---

[2] KT asserts a third ground for vacating the Award -- that it contravenes public policy. This is not grounds for vacatur of an award under the FAA, but rather a defense to confirmation of an award under the Convention. *See* 9 U.S.C. § 10(a)(4); Inter-American Convention, Art. V(1)(d), V(2)(b). Consequently, this argument is addressed below in the discussion of ABS's cross-petition to confirm the Award.

[3] As this provision corresponds to the defense to confirmation of an award in the Convention when "the arbitration procedure has not been carried out in accordance with the terms of the agreement signed by the parties," that defense is not discussed again *infra* regarding the cross-motion to confirm the Award.

Here, the Panel did not exceed its authority. The parties submitted the issue of title to

KS-3 for arbitration. Neither party questioned the tribunal's authority to determine title pursuant

to the arbitration provisions in the parties' agreements or for any reason. KT explicitly

acknowledged and invoked the tribunal's authority to determine title. The Panel determined only

the issue of title, and no other independent claims, such as the tort claims, that the parties had

raised.

KT's quarrel is that, in deciding the issue of title, the Panel concluded that the MSIP

Order was invalid, specifically that MSIP was not the Korean governmental agency with

authority over export approvals, and that MSIP's approval requirements, because they were

retroactive, violated American notions of due process. In effect, KT argues that the Panel was

empowered to determine which of the parties holds title to KS-3, but was not authorized to

consider all of the possible reasons because certain arguments were off limits. Regardless of the

merits of this argument, it is misplaced because the Panel's principal holding did not depend on

the validity of the MSIP Order. The Panel applied New York law, as provided by the parties'

agreements, to determine that title had passed to ABS in 2011, and that a post facto regulation or

decree -- whether valid or not -- did not reverse the completed passage of title, which had

occurred two years earlier. The Panel found that all conditions precedent to the transfer of title

had been satisfied and construed the contractual requirements for all "necessary approvals and

licenses" to mean those necessary at the time title passed and not some indefinite time in the

future.

The Panel held only in the alternative that, "even if Korean law governed, which it did

not," the MSIP Order was unauthorized. Similarly, the Panel's due process discussion appears

as a coda at the end of the Award, "[e]ven if it is assumed, against the weight of evidence and for

8

the sake of the argument, that the MSIP Order" was mandatory law that overrides contractual obligations. The Panel did not exceed its authority because its principal holding was squarely one of "construing [and] applying the contract," which was within the scope of the arbitration provisions in the parties' agreements. *See E. Associated Coal Corp.*, 531 U.S. at 62.

## 2. Manifest Disregard of the Law

A court may vacate an award based on manifest disregard of the law "only if the court finds both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016) (internal quotation marks omitted). "[T]he award should be enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached." *Wallace*, 378 F.3d at 190 (emphasis in the original). KT has failed to show that the Award was based on manifest disregard of the law and lacked any colorable justification for awarding title to ABS.

### a. Korean Law

KT argues that the Panel disregarded the MSIP Order, the FTA and related Korean regulations. This argument is unpersuasive because as discussed above, the Panel did not ignore the MSIP Order, but rather determined that it was not a "governing legal principle" because it did not apply retroactively to unwind a completed transaction. Nor has KT shown that the relevant Korean law "was well defined, explicit, and clearly applicable to the case." *Zurich Am. Ins. Co.*, 811 F.3d at 589. KT's own legal expert, Professor Kyongjin Choi, stated that the MSIP Order, which stated that the sale of KS-3 was a Korean export regulated by the FTA, was a "controversial and debatable interpretation of the [Korean] law." Also, the MSIP Order was not

"clearly applicable to the case" at the relevant time, because the order did not exist, nor was it even contemplated, when KT transferred title to the satellite. The Panel's decision not to apply the MSIP Order retroactively was not in manifest disregard of well defined, explicit and clearly applicable governing law.

### b. Presumption of Validity and Regularity in Government Action

KT argues that, in finding the MSIP Order to be invalid, the Award disregards the presumptions of validity and regularity enjoyed by agency actions. This argument fails for two reasons. First, KT has not cited any authority for the proposition that the presumption of the validity of agency action also requires its retroactive application. To the contrary, "[t]here is no principle of law better settled, than that every act of a court of competent jurisdiction, shall be presumed to have been rightly done *till the contrary appears*." *Voorhees v. Jackson*, 35 U.S. 449, 449 (1836) (emphasis added).

Second, as discussed above, the Panel's findings concerning the validity of the MSIP Order were not necessary to the Panel's primary holding that all conditions precedent had been satisfied at the time title passed. To the extent that the Panel may have disregarded a presumption in reaching a secondary and alternative basis for the Award, that does not undermine the principle justification for the outcome reached. *See Wallace*, 378 F.3d at 190 ("[T]he award should be enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached.")

### c. New York Contract Law

KT argues that the Panel disregarded New York law in finding an allegedly illegal contract to be enforceable. This argument is yet another way of arguing that the MSIP Order should have been applied retroactively to render the Purchase Agreement "illegal" and reverse

10

the transfer of title.  As discussed above, KT has failed to show that the Award, and its refusal to apply the MSIP Order retroactively, lacked any colorable justification.

**B.      Cross-Petition to Confirm the Award**

ABS cross-moves to confirm the Award.  Under the Convention, "a district court must enforce an arbitral award . . . unless a litigant satisfies one of the seven enumerated defenses," *Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 106 (2d Cir. 2016), including that "the recognition or execution of the decision would be contrary to the public policy" of the State in which recognition and execution is requested.  Inter-American Convention, Art. V(2)(b).  Because KT has not carried its burden to establish this defense, ABS's cross-petition to confirm the Award is granted.

The public policy defense "must be construed very narrowly to encompass only those circumstances where enforcement would violate our most basic notions of morality and justice." *Telenor*, 584 F.3d at 411 (internal quotation marks omitted).  "[A] judgment that tends clearly to undermine the public interest, the public confidence in the administration of the law, or security for individual rights of personal liberty or of private property is against public policy." *Corporacion*, 832 F.3d at 106.

KT argues that the Award violates the public policy "of American courts to respect a valid foreign decree."  *Sea Dragon, Inc. v. Gebr. Van Weelde Scheepvaarkantoor B.V.*, 574 F. Supp. 367, 372 (S.D.N.Y. 1983).  KT's argument is unpersuasive because the policy of American courts to recognize foreign orders -- whether judicial or administrative -- is not absolute.  Foreign *judgments* are entitled to recognition by U.S. courts, except in specified circumstances.  U.S. courts may refuse to recognize foreign judgments where the defendant did not receive sufficient notice of the proceedings to enable it to defend, the judgment is repugnant

11

to the public policy of the United States or the foreign proceeding was contrary to the parties'

agreement to submit the controversy to another forum. Restatement (Third) of Foreign Relations

Law §§ 481-482 (1987); *accord* Restatement (Fourth) of Foreign Relations Law: Jurisdiction

Appendix TD No. 1 (2014) §§ 401, 404. As foreign administrative orders may carry less force

than foreign judicial orders, at least the same exceptions to enforcement must apply. *See*

Restatement (Third) § 481, Comment f ("[N]o rule either requires or prevents recognition and

enforcement of decisions of foreign tribunals that do not possess all the characteristics of courts.

A number of United States decisions have . . . recognized and enforced decisions of such

tribunals, in circumstances where the essential fairness and reliability of the proceeding was

established.").[4]

The MSIP Order is an administrative and not a judicial order. It was issued without

notice to ABS. KT refused ABS's request to appeal the MSIP Order in the Korean courts after it

was issued, and KT instead asserted that the issue of the validity of the Purchase Contract was to

be "conclusively determined" in arbitration. Now KT maintains that the arbitrators had no

choice but to enforce the MSIP Order retroactively and that MSIP has the last word as to what

approvals were required in 2011 for the sale of the satellite. If KT's position were adopted, ABS

would have had no avenue to protect or even assert its rights, and the parties' agreement to

arbitrate any dispute between them would be undermined. KT has failed to show that

---

[4] The most recent tentative draft of the Restatement (Fourth) of Foreign Relations Law:
Jurisdiction § 401 TD No 1 (2014), similarly provides:

> The general principles underlying recognition, particularly the desire to avoid
> unnecessary duplication of legal proceedings while protecting the rights of persons
> subject to an adverse foreign decision or order, apply in cases . . . where the process in
> the administrative proceeding, including the disinterested and independent nature of the
> tribunal, satisfies the general criteria for judgment recognition.

enforcement of the Award, which declined to apply the MSIP Order, "would violate our most basic notions of morality and justice." [5] *Eurocar Italia S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998) (internal quotation marks omitted); *accord PDV Sweeny, Inc.,* 2015 WL 5144023, at *11 (internal quotation marks and citations omitted).

That enforcement of the Award will result in KT's being unable to comply with both the Award and the MSIP Order does not change the analysis. While KT is in an unenviable position, it has not cited any persuasive authority that its dilemma is a defense to enforcement of an arbitration award. *Cf. Telenor Mobile Commc'ns AS v. Storm LLC*, 524 F. Supp. 2d 332, 357 (S.D.N.Y. 2007) ("[E]ven if there is a direct conflict between Ukranian law and the Final Award, New York's public policy does not call for vacatur here. First, it is unclear whether an established public policy against enforcement of arbitral awards that compel a violation of foreign law even exists in New York."), *aff'd*, 584 F.3d 396 (2d Cir 2009). KT relies on *Sea Dragon* to support the argument that the Award should be vacated because it exposes KT "to the dilemma of conflicting orders." 574 F. Supp. at 372. The court in *Telenor* rejected the same argument, stating:

> First, *Sea Dragon* is not controlling law, as it does not bind this Court, was decided over two decades ago, and has not been relied upon for the relevant proposition since it was decided. In addition, although Storm claims that the facts of this case "parallel[ ]" those in *Sea Dragon*, the facts of *Sea Dragon* vary significantly from the facts of this case. While the district court in *Sea Dragon* found that the petitioner in that case had been given adequate notice and an opportunity to be heard in the Dutch proceedings, Telenor had neither notice nor an opportunity to respond in the Ukrainian proceedings. Moreover, while the *Sea Dragon* court specifically found that the Dutch order was obtained "in compliance with ... American due process standards," the Ukrainian litigation, which was

---

[5] The Award also addressed difficult issues that pose a greater challenge to the principle of comity underlying the recognition of foreign judgments and order -- finding, for example, that the proceedings leading to the MSIP Order were not disinterested and independent in view of the political environment, and that the proceedings violated American notions of due process. This Opinion does not need to reach those issues to conclude that KT has not sustained its burden of proving an applicable defense to confirmation of the Award.

undertaken in a collusive and vexatious manner, did not comply with those standards. *Id.* at 348 (internal citations omitted). Similarly here, *Sea Dragon* is not controlling law, has not been relied upon for many years, and is distinguishable because ABS did not have notice or an opportunity to respond to the MSIP Order.

### C. Attorneys' Fees and Costs

ABS's request for attorneys' fees and costs it incurred in opposing KT's Petition and bringing its cross-petition is granted. "In federal practice, the general rule is that each party bears his or her own attorneys['] fees. However, the parties may agree by contract to permit recovery of attorneys' fees. If the contract is valid under state law, the federal court will enforce the contract as to attorneys' fees." *Regan v. Conway*, 768 F. Supp. 2d 412, 415 (E.D.N.Y. 2011) (citing *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306 (2d Cir. 1993)). The parties did just that in the Purchase Agreement, which provides that "[a]ny costs, fees, or taxes incidental to enforcing the final award shall be charged against the Party resisting such enforcement." KT resisted the enforcement of the Award through its Petition and opposition to the cross-petition. KT is contractually bound to bear attorneys' fees and costs associated with this action.

## IV. CONCLUSION

For the foregoing reasons, KT's Petition to vacate the Award is DENIED. ABS's cross-petition to confirm the Award is GRANTED, and ABS's motion for attorneys' fees and costs is GRANTED.

The Clerk of Court is respectfully directed to close the motions at Docket Nos. 6 and 41, and close the case.

Dated: April 10, 2018
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

14