USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/12/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
KT CORPORATION, et al.,

                               Petitioners,

          -against-

ABS HOLDINGS, LTD., et al.,

                              Respondents.
------------------------------------------------------------- X

17 Civ. 7859 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

This case arises out of a Final Arbitration Award (the "Final Award") issued in a dispute between Petitioners KT Corporation and KTSAT Corporation (collectively, "KT") and Respondents Asia Broadcast Satellite Global, Ltd. and Asia Broadcast Satellite Holdings, Ltd. (collectively, "ABS") over title to a geostationary satellite and related issues. ABS petitions to confirm the Final Award and moves to recoup attorneys' fees and costs. KT cross-petitions to vacate the Final Award and seeks remand of this case to the International Chamber of Commerce ("ICC"). For the reasons stated below, ABS's Petition to confirm is granted, and KT's cross-petition to vacate is denied.

**I.    BACKGROUND**

    **A.    The Purchase and Operation Agreements and the MSIP Order**

KT is a Korean satellite communications provider that manages the Korean satellite fleet. ABS is a satellite communications provider that is incorporated in Bermuda and based in Hong Kong. In 2010, ABS and KT entered into two agreements: (1) a Purchase Agreement whereby KT sold to ABS a geostationary satellite, then known as KOREASAT-3 ("KS-3"); and (2) an Operation Services Agreement, which provided that KT would operate KS-3 on behalf of ABS

(collectively, "Agreements"). Both agreements contain a mandatory arbitration clause, and a choice of law provision selecting New York law without giving effect to its conflict of law principles.

The Agreements contain various provisions related to governmental authorizations and approvals related to the sale and operation of KS-3. Under the Purchase Agreement, KT is "responsible for obtaining and maintaining . . . all governmental and regulatory licenses and authorizations required" to perform its obligations under the Purchase Agreement. The Purchase Agreement provides that the total purchase price is $500,000. The Operation Agreement states that KT is obligated to "obtain and maintain, in all material respects, all necessary licenses, clearances, permits, authorizations or permissions, that are applicable to KT with respect to its performance of the Services under this Agreement" and that KT will perform its obligations in exchange for $800,000 annual fee and various technical engineering fees provided in Exhibit B to the Operation Agreement. In 2011, KT delivered to ABS the satellite and related bills of sale, in exchange for $500,000.

On December 18, 2013, two years after the transaction closed, Korea's Ministry of Science, ICT and Future Planning ("MSIP") issued an order (the "MSIP Order") that, among other things, declared the Purchase Agreement "null and void and in violation of the mandatory law (Foreign Trade Act)" ("FTA") because KT had failed to obtain an FTA permit; cancelled KT's allocation of the spectrum for the KT Band; and directed KT to return the satellite to its original operating condition. In 2016, the Seoul Central District Court entered a criminal judgment against key KT executives who had been involved in the sale of KS-3.

On June 18, 2014, KT and ABS submitted issues arising under the Purchase Agreement and the Operation Agreement to the ICC Arbitration Panel (the "Panel"). Neither party

2

questioned the tribunal's authority to issue a determination on both the KS-3 title issue and claims under the Operation Agreement. The arbitral proceedings were governed by New York law, seated in New York, and presided over by a three-member tribunal.

### B. The Partial Arbitration Award

The Panel, by majority,[1] held that title transferred to ABS in 2011 when all the contractual conditions precedent to transfer were satisfied, and that no existing Korean mandatory law was violated when title passed to ABS. The Partial Award declared that ABS holds title to, and thus owns, KS-3, and ordered KT not to interfere with the ongoing operation of KS-3.

### C. The Opinion and Order, dated April 10, 2018

On October 12, 2017, KT petitioned in this action to vacate the Partial Award and sought remand of this case to the ICC. On November 6, 2017, ABS cross-petitioned to confirm the Partial Award and moved to recover attorneys' fees and costs.

By Opinion and Order, dated April 10, 2018 (the "Opinion"),[2] KT's petition was denied and ABS's cross-motion was granted. The Opinion held that the Panel had not exceeded its authority, because the parties had jointly submitted the issue of KS-3 title to the Panel pursuant to the arbitration provisions in the Agreements, and the Panel's holding that title had passed under New York law did not depend on the validity of the MSIP Order. The Opinion also concluded that the Panel had not manifestly disregarded the law, because the Panel did not ignore the MSIP Order; instead, the Panel concluded that the MSIP Order was not the governing

---

[1] All further references in this Opinion to the "Panel" refer to the panel acting by majority.
[2] A corrected opinion was filed on July 10, 2018, correcting the Opinion. The Corrected Opinion does not change the legal analysis and the result of the Opinion.

3

law because it did not to apply when title passed, and did not apply retroactively to unwind the sale of the satellite.

### D. The Final Award

On March 9, 2018, the Panel rendered the Final Award, which "deals with all of the issues and the Parties' claims not addressed in the Partial Award." The 62-page Final Award declared that (1) the Agreements were properly terminated by ABS in response to KT's breach; (2) ABS took reasonable mitigation actions in light of KT's breaches, (3) ABS itself did not breach the Agreements; (4) ABS was owed $1,036,237.15 in damages, comprised of $748,564 in principal and $287,673.15 in interest compounded since December 1, 2013 through the date of the Final Award at a rate of 9% and (5) KT's claims for damages are meritless.

## II. STANDARD

ABS brings the Petition to confirm the Final Award pursuant to the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 207 (incorporating the New York Convention). KT cross-petitions to vacate under the FAA as well as the overlapping grounds under the New York Convention.

Ordinarily, confirmation of an arbitration decision is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 132 (2d Cir. 2015). "A court's review of an arbitration award is . . . severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *United Bhd. of Carpenters & Joiners of Am. v. Tappan Zee Constructors, L.L.C.*, 804 F.3d 270, 274–75 (2d Cir. 2015). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for

the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks omitted).

The New York Convention provides limited grounds for refusing confirmation of an award, including that (1) "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration," (2) "the arbitral procedure was not in accordance with the agreement of the parties" and (3) "[t]he recognition or enforcement of the award would be contrary to the public policy of that country." New York Convention, Art. V(1)(c)–(d), (2)(b). The FAA expressly incorporates the terms of the Convention. *See* 9 U.S.C. § 201 *et seq.*

The New York Convention does not articulate a basis for vacating arbitration awards, but a court applying the New York Convention may vacate an arbitration award based on the grounds provided in the FAA. *PDV Sweeny, Inc. v. ConocoPhillips Co.*, No. 14 Civ. 5183, 2015 WL 5144023, at *6 (S.D.N.Y. Sept. 1, 2015), *aff'd*, 670 F. App'x 23 (2d Cir. 2016) (summary order); *see Scandinavian Reinsurance Co. v. Saint Paul Fire and Marine Ins. Co.*, 668 F.3d 60, 70 (2d Cir. 2012). Under Section 10 of the FAA, an arbitration award may be vacated, as relevant here, when "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

In addition to the statutory provisions, an award "may be vacated when an arbitrator has exhibited a manifest disregard of the law." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011) (internal quotation marks and citation omitted). This doctrine requires more than "error or misunderstanding with respect to the law." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004). "[T]he award should be enforced, despite a court's disagreement with it on the

merits, if there is *a barely colorable justification* for the outcome reached." *T.Co. Metals, L.L.C. v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (quoting *Wallace*, 378 F.3d at 190; emphasis in the original). "A motion to vacate filed in a federal court is not an occasion for de novo review of an arbitral award." *Wallace*, 378 F.3d at 189.

The party seeking to "vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) L.L.C.*, 648 F.3d 68, 74 (2d Cir. 2011). Similarly, the party opposing confirmation of an arbitral award has the burden of proving that a defense applies. *Telenor Mobile Commc'ns AS v. Storm L.L.C.*, 584 F.3d 396, 405 (2d Cir. 2009).

## III. DISCUSSION

### A. Petition to Vacate the Final Award

KT asserts two grounds as a basis for vacating the Final Award:[3] (1) the Panel acted in manifest disregard of the New York contract law by failing to award KT the purchase price or other compensation for KS-3 after awarding ABS title to it; and (2) the Panel exceeded its authority by resting its holding on the invalidity of the MSIP Order. For the reasons below, KT has failed to carry its significant burden of showing any valid reason to vacate the Final Award.

#### 1. Exceeding Authority

Section 10(a)(4) of the FAA allows for vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject

---

[3] KT asserts a third ground for vacating the Award -- that it contravenes public policy. This is not a basis for vacatur of an award under the FAA, but rather a defense to confirmation of an award under the New York Convention. *See* New York Convention, Art. V(2)(b). Consequently, this argument is addressed below in the discussion of ABS's cross-petition to confirm the Final Award.

6

matter submitted was not made." 9 U.S.C. § 10(a)(4).[4] Applying that standard, the Supreme Court held that "[i]t is not enough for petitioners to show that the panel committed an error -- or even a serious error. It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (internal quotation marks and citations omitted; all but first alteration in the original). An award will not be vacated as long as the panel "is even arguably construing or applying the contract and acting within the scope of [its] authority." *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000).

KT argues that the Panel acted beyond its authority in issuing the Final Award because its holdings -- that KT breached the Agreements, ABS undertook reasonable mitigation, and KT owes ABS damages -- were ultimately based on the Panel's earlier finding in the Partial Award that Korea's actions to nullify the parties' transaction were improper. KT further argues that the Panel was not empowered to make such a finding.

KT mischaracterizes the Final Award. The Panel found that KT had breached the Agreements because KT failed to adduce any evidence that it was capable of providing "operational services to KS-3 pursuant to the Operation[] Agreement," or that KT "complied with [its] obligation to obtain and maintain authority from the Korean government to operate [KS-3] on ABS's behalf." Whether or not Korea's actions were lawful, or even that the MSIP Order may have caused KT's breach, are irrelevant to the finding that KT did not fulfill its

---

[4] As this provision corresponds to the defense to confirmation of an award in the New York Convention when "the arbitral procedure was not in accordance with the agreement of the parties," that defense is not discussed again *infra* regarding the cross-motion to confirm the Final Award. New York Convention, Art. V(1)(d).

7

contractual obligations. As with the Partial Award, the Panel did not exceed its authority because the basis for its holding was one of "construing [and] applying the contract," which was within the scope of the arbitration provisions in the parties' agreements.

KT also argues that the Panel acted beyond its authority because it interpreted the MSIP Order -- specifically, the Panel interpreted the order to require the satellite's coverage of the Korean Peninsula but not the Middle East, where ABS's customers are located. The Panel apparently found this restriction rendered KT unable to perform its obligations under the Agreements. KT asserts that the Panel's interpretation of the MSIP Order is incorrect. Regardless of who is correct, as discussed above, the Panel had other sufficient bases to find that KT had breached the Agreements, which was a question squarely within its authority.

### 2. Manifest Disregard of the Law

A court may vacate an award based on manifest disregard of the law "only if the court 'finds both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.'" *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016) (quoting *Wallace*, 378 F.3d at 189). "[T]he award should be enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached." *Wallace*, 378 F.3d at 190 (internal quotation marks omitted; emphasis in the original). KT has failed to show that the Final Award was based on a manifest disregard of the law and lacked any colorable justification for its outcome.

### a. New York Law

KT argues that it is entitled to additional technical engineering fees as a part of KS-3 purchase price, because the Agreements provided for both an initial payment of $500,000 plus

8

technical engineering fees of almost $7 million payable over time. Under New York law, "a written agreement . . . must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002). Here, the Purchase Agreement provided for a "Total Purchase Price" of $500,000, which the parties agree was paid. The Operation Agreement provided that KT would continue operating KS-3 on ABS's behalf, in exchange for various technical engineering fees detailed in Exhibit B to the Operation Agreement.

The Panel's conclusion that KT is not entitled to additional technical engineering fees under the Operation Agreement is not in manifest disregard of the law. Under the Operation Agreement, KT was obligated to provide certain operational services and obtain and maintain all necessary permits and authorizations to perform its obligations thereunder. The Panel held that ABS had properly terminated the agreement because KT had breached these obligations. The Panel found that KT had failed to adduce any evidence that it was capable of providing operational services to KS-3 pursuant to the Operation Agreement, or that KT complied with its obligation to obtain and maintain authority from the Korean government to operate KS-3 on ABS's behalf. The Panel concluded that "[b]ecause . . . Claimants properly terminated the Operation[] Agreement, Respondents' claims for damages on the theory that they were owed service fees after an improper termination of the Agreement fail." KT's argument that the Panel did not provide any explanation for the denial of additional technical engineering fees is thus incorrect. KT's argument that it is entitled to the engineering fees under an equitable theory of quantum meruit is similarly flawed, because KT did not adduce evidence that it could have or did provide the operational services in question. KT's argument that the Panel's holding is in

manifest disregard of New York law, unjust and without colorable justification is entirely without substance.

### b. Korean Law

KT seems to assert that the Final Award was in manifest disregard of Korean law because the Panel "simply . . . ignore[d] Korea's mandatory laws . . . to unwind the transaction and punish the parties for undertaking it." This argument was made and rejected with regard to the Partial Order on the grounds that (i) "the Panel did not ignore the MSIP Order, but rather determined that it was not a 'governing legal principle' because it did not apply retroactively to unwind a completed transaction," and (ii) KT did not show that the relevant Korean law "was well defined, explicit, and clearly applicable." *Zurich Am. Ins. Co.*, 811 F.3d at 589. The Court's holding and analysis are incorporated by reference here. *See* Docket No. 80, at 12.

## B. Cross-Petition to Confirm the Final Award

ABS cross-moves to confirm the Final Award. "[A] district court is strictly limited to the seven defenses under the New York Convention when considering whether to confirm a foreign award," *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 92 (2d Cir. 2005) (citing 9 U.S.C. § 208), including that "[t]he recognition or enforcement of the award would be contrary to the public policy of that country," New York Convention, Art. V(2)(b). Because KT has not carried its burden to establish this defense, ABS's cross-petition to confirm the Final Award is granted.

The public policy defense "must be construed very narrowly to encompass only those circumstances where enforcement would violate our most basic notions of morality and justice." *Telenor*, 584 F.3d at 411 (internal quotation marks omitted). "[A] judgment that tends clearly to undermine the public interest, the public confidence in the administration of the law, or security

for individual rights of personal liberty or of private property is against public policy." *Corporacion Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploracion y Produccion*, 832 F.3d 92, 106 (2d Cir. 2016) (internal quotation marks omitted).

KT argues that the Final Award violates the public policy "of American courts to respect a valid foreign decree." *Sea Dragon, Inc. v. Gebr. Van Weelde Scheepvaarkantoor B.V.*, 574 F. Supp. 367, 372 (S.D.N.Y. 1983). This argument is identical to that raised in its opposition to confirm the Partial Award, and therefore rejected for the same reasons stated in the Opinion and Order, dated April 10, 2018. *See* Docket No. 80, at 12–13.

Among the several factors listed in the Opinion that support the Panel's declining to apply the MSIP Order was that it was issued without notice to ABS. KT now asserts that ABS had notice of and participated in the regulatory proceedings before the MSIP. ABS counters that its "participation" was limited to "indirect attempts at communicating with the MSIP via Korean counsel (the MSIP refused to interact with ABS), which were aimed at convincing the MSIP to continue to allow KT to operate the Satellite on ABS's behalf . . . ." Regardless of how this conduct is characterized, it does not tip the balance toward a finding that the Panel's declining to apply the MSIP Order "would violate our most basic notions of morality and justice." *Eurocar Italia S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998) (internal quotations marks omitted).

## IV. CONCLUSION

For the foregoing reasons, ABS's Petition to confirm the Final Award is GRANTED. KT's Cross-Petition to vacate the Final Award is DENIED. For reasons stated in the Opinion and Order, dated April 10, 2018, ABS's motion for attorneys' fees and costs is GRANTED. The

parties shall make their best efforts to agree on the amount of fees and costs and shall report to the Court within 30 days of this order whether they have done so.

The Clerk of Court is respectfully directed to close the motion at Docket No. 71.

Dated: July 12, 2018
      New York, New York

                                                       **LORNA G. SCHOFIELD**
                                           **UNITED STATES DISTRICT JUDGE**