18-2300-cv
KT Corp. v. ABS Holdings, LTD.

1:17-cv-07859-LGS

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of September, two thousand nineteen.

PRESENT:   RICHARD C. WESLEY,
                DENNY CHIN,
                JOSEPH F. BIANCO,
                      *Circuit Judges*.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Sept. 3, 2019

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

KT CORPORATION, KTSAT CORPORATION,

    *Petitioners-Appellants*,

                v.     18-2300-cv

ABS HOLDINGS, LTD., ABS GLOBAL, LTD.,

    *Respondents-Appellees*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PETITIONERS-APPELLANTS:   PAUL A. WERNER (Imad S. Matini, Daniel L. Brown, *on the brief*), Sheppard, Mullin, Richter & Hampton LLP, Washington, DC, and New York, New York.

| | |
|---|---|
| FOR RESPONDENTS-APPELLEES: | MICHAEL D. NOLAN (Kamel M. Aitelaj, Brett P. Lowe, *on the brief*), Milbank, Tweed, Hadley & McCloy LLP, Washington, DC. |

Appeal from the United States District Court for the Southern District of New York (Schofield, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the orders of the district court are **AFFIRMED.**

Petitioners-appellants KT Corp. and KTSAT Corp. (together, "KT") appeal the district court's opinions and orders confirming two arbitration awards (the "Awards") in favor of respondents-appellees ABS Holdings, Ltd. and ABS Global, Ltd. (together, "ABS"). KT argues that the district court erred because (1) the arbitration panel exceeded its powers in issuing the Awards, (2) the Awards are based on a manifest disregard of the law, and (3) the Awards violate public policy. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## BACKGROUND

### A. *The Facts*

The facts are largely undisputed. KT is a Korean satellite communications provider that manages the Korean satellite fleet. ABS is a satellite communications provider incorporated in Bermuda and headquartered in Hong Kong. In 2010, ABS and KT entered into two agreements (the "Agreements"): (1) a Purchase Agreement whereby KT agreed to sell to ABS a geostationary satellite (the "Satellite"), and (2) an

2

Operations Agreement whereby KT agreed to operate the Satellite on behalf of ABS. Both agreements contained a New York choice-of-law provision and a mandatory arbitration clause. Under the Purchase Agreement, KT was responsible for obtaining "all necessary licenses, consents and approvals for the sale of the Satellite" and for "maintaining . . . all governmental and regulatory licenses and authorizations required" to perform its obligations. App. at 254, 261. The Purchase Agreement further provided that the title of the Satellite "shall transfer to ABS . . . [on] September 4, 2011, provided that (a) KT receives the required payment . . . and (b) any necessary approvals . . . have been received." App. at 260.

On February 18, 2011, KT delivered the Satellite to ABS. In September 2011, ABS paid the $500,000 purchase price and KT delivered two bills of sale transferring title of the Satellite to ABS.

On December 18, 2013, two years after the completion of the transaction, the Republic of Korea's Ministry of Science, ICT and Future Planning (the "MSIP") issued an order (the "MSIP Order") that, among other things, declared the Purchase Agreement "null and void" on the grounds it was "in violation of the mandatory law (Foreign Trade Act)" (the "FTA") because KT failed to obtain an export permit. App. at 306. The MSIP Order cancelled KT's permission to use certain frequencies to operate the Satellite and directed KT to return the Satellite to its original operating condition. App. at 307.

3

B.    *Arbitration Proceedings*

On December 22, 2013, KT and ABS proceeded to arbitration before the International Chamber of Commerce ("ICC") to resolve their disputes arising out of the Agreements. On July 18, 2017, the three-member ICC panel (the "panel") issued a partial award (the "Partial Award"), which dealt solely with the issue of title to the Satellite. The panel concluded that ABS held title to and thus owned the Satellite. The panel reasoned that title lawfully passed to ABS in 2011 when all the conditions precedent to the sale were met and the bills of sale were issued because no mandatory Korean export permit requirement was then in existence. In the alternative, the panel concluded that even "if the MSIP Order was mandatory law, the outcome in the . . . case would not be changed . . . because the Order was issued *ex post facto*, retroactively without time limit, and most importantly, with no notice to the Parties," which is "clearly in violation of New York law." App. at 207.

On March 9, 2018, the panel issued a final award (the "Final Award"), which, by its terms, dealt with "all of the issues and Parties' claims not addressed in the Partial Award." App. at 793. The panel concluded, *inter alia*, that KT breached the Agreements by failing to obtain and maintain all necessary governmental approvals as required under the Agreements, ABS took reasonable mitigation efforts, and KT was liable for damages for breaching the Agreements.

4

C.  *Proceedings Below*

KT filed a petition to vacate the Partial Award, and ABS filed a cross-petition to confirm the it.  Thereafter, ABS filed a petition to confirm the Final Award, and KT filed a cross-petition to vacate it.

The district court denied KT's petition to vacate the Partial Award and granted ABS's cross-petition to confirm the Partial Award.  *KT Corp. v. ABS Holdings, Ltd.* ("*Partial Award Decision*"), No. 17-civ-7859, 2018 WL 3364390, at *7 (S.D.N.Y. July 10, 2018).  Soon after, the district court granted ABS's petition to confirm the Final Award and denied KT's cross-petition to vacate the Final Award.  *KT Corp. v. ABS Holdings, Ltd.* ("*Final Award Decision*"), No. 17-civ-7859, 2018 WL 3435405, at *6 (S.D.N.Y. July 12, 2018).  This appeal followed.

## DISCUSSION

KT argues that the district court erred in confirming and not vacating the Partial and Final Awards because (1) the panel exceeded its authority, (2) the Awards are based on a manifest disregard of the law, and (3) the Awards violate public policy.  We are not persuaded.

A.  *Standard of Review*

We review "a district court's decision to confirm or vacate an arbitration award *de novo* on questions of law and for clear error on findings of fact." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir.

5

2016). "[A]n arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Landy Michaels Realty Corp. v. Local 32B-32 Serv. Emps. Int'l*, 954 F.2d 794, 797 (2d Cir. 1992) (internal quotation marks omitted).

  **B.** *Applicable Law*

  The parties cross-petition to vacate or confirm the Awards pursuant to the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Award ("New York Convention") and the Federal Arbitration Act ("FAA"). "[T]he FAA and the New York Convention work in tandem, and they have overlapping coverage to the extent that they do not conflict." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102 n.1 (2d Cir. 2006) (internal quotation marks omitted). Indeed, the FAA expressly incorporates the terms of the New York Convention, *see* 9 U.S.C. § 201 *et seq.*, and a court applying the New York Convention may vacate an arbitration award based on the grounds provided in the FAA, *see Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 70 (2d Cir. 2012).

  The FAA provides that an arbitration award may be vacated when "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). An award will not be vacated even where there is "serious error," but only where the panel "effectively dispense[s] [its] own brand of industrial justice." *Stolt-*

6

*Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (internal quotation marks omitted). Under the FAA, an award may be vacated "when an arbitrator has exhibited a manifest disregard of law." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011). Vacatur on this ground requires a showing that (1) "the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether," and (2) "the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016).

The New York Convention provides that a court may refuse to confirm an award where, among other things, "[t]he recognition or enforcement of the award would be contrary to the public policy of [the confirming] country." New York Convention, Art. V(2)(b). This affirmative defense "must be construed very narrowly to encompass only those circumstances where enforcement would violate our most basic notions of morality and justice." *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 411 (2d Cir. 2009) (internal quotation marks omitted). The party seeking to "vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011). Accordingly, the defense is frequently invoked but rarely successful, in view of the strong policy favoring arbitration. *Telenor*, 584 F.3d at 407-10.

7

C.   *Application*

We discuss the Partial and Final Awards in tandem and conclude that the district court did not err in confirming the Awards and in denying KT's petition and cross-petition to vacate the Awards.

1.   *Exceeding Authority*

KT argues that the panel exceeded its authority in concluding that the MSIP Order was "unauthorized," "*ultra vires*," and in violation of due process principles. It argues that this conclusion was essential to the panel's determinations that ABS held title to the Satellite and that KT breached the Agreements. We are unconvinced. Despite arguing that the panel exceeded its authority, counsel for KT refused to challenge the MSIP Order before either an agency or court in the Republic of Korea, and represented to counsel for ABS that "the validity of the Purchase Contract is a subject matter to be conclusively determined in the arbitration proceedings pending between [KT] and ABS." App. at 611-12. And even assuming these statements regarding the MSIP Order did exceed the panel's authority, the panel's conclusions did not rest on them; they were part of the panel's alternative holding in "a coda at the end of the [Partial] Award." *Partial Award Decision*, 2018 WL 3364390, at *4; *see also* App. at 206 (noting that "the foregoing is sufficient to ground the majority's decision" and proceeding to discuss validity of MSIP Order).

8

The panel's principal holding in the Partial Award was that title passed to ABS in 2011 after the parties agreed that all conditions precedent to the passing of title were satisfied and bills of sale transferred, and that no later-passed law or regulation affected the legal passage of title to ABS.  The panel's conclusion in the Final Award was that KT breached the Agreements by failing to "compl[y] with [its] obligation to obtain and maintain authority from the Korean government to operate the Satellite on ABS's behalf" as required under the Agreements.  App. at 748.  These conclusions, based on the application of New York law to the Agreements between the parties, at least "arguably constru[ed] or appl[ied] the contract" and thus did not exceed the panel's authority.  *See E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000).

2. *Manifest Disregard of the Law*

KT argues that the panel's failure to give effect to the MSIP Order manifestly disregarded Korean law, New York contract law, and a presumption in favor of the validity and regularity of agency actions.  KT also argues that the panel's conclusion that KT is not entitled to damages for technical engineering fees under the Operations Agreement manifestly disregarded New York contract law and equitable principles.  These arguments fail for substantially the reasons given by the district court in its thorough and well-reasoned decisions.  *See Partial Award Decision*, 2018 WL 3364390, at *5; *Final Award Decision*, 2018 WL 3435405, at *4-5.  Under Korean law, the

9

mandatory and retroactive nature of the MSIP Order is far from "well defined, explicit, and clearly applicable." *Zurich Am. Ins. Co.*, 811 F.3d at 589; *see* App. at 170 (KT's own legal expert noting that the MSIP Order was a "controversial and debatable interpretation of [Korean] law"). The panel applied New York law to the Agreements, it did not ignore any well-defined and clearly applicable law, *Zurich Am. Ins. Co.*, 811 F.3d at 589, and there was at least a "colorable justification" for the outcome reached, *Landy Michaels Realty Corp.*, 954 F.2d at 797.

### 3.  *Public Policy*

KT argues that public policy requires deference to foreign rulings and decrees and the panel violated public policy by concluding that the MSIP Order did not serve to unwind the transaction. Appellant's Br. at 48 (arguing that the panel was "not free simply to disagree with Korea's laws and enforcement actions"). We disagree.

The public policy defense "is limited to situations where the contract as interpreted [by the arbitrators] would violate some explicit public policy that is *well defined and dominant*, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43 (1987) (emphasis added) (quotation marks and citations omitted). Though it is the well-defined and dominant public policy of the United States to enforce foreign court judgements not repugnant to U.S. policy, *see Voorhees v. Jackson*, 35 U.S. 449, 472 (1836); *Ackermann v. Levine*, 788 F.2d 830, 841 (2d

10

Cir. 1986), the extent to which this policy extends to the enforcement of foreign regulatory actions is unclear. In any event, even assuming it is well-defined policy to give effect to foreign administrative decrees, *see Bank of Augusta v. Earle*, 38 U.S. 519, 589 (1839) (noting that "Courts of justice presume the tacit adoption of [foreign laws]"), it is far from clear that the MSIP Order was an enforceable administrative decree under Korean law. Indeed, KT's legal expert declared that the position taken by MSIP that the Satellite is a Korean export subject to the FTA is "a controversial and debatable interpretation of the law," and ABS's legal expert testified that ABS's "failure to obtain an FTA export permit prior to transferring title did not violate the FTA." App. at 170. Given this legal uncertainty, the panel's conclusion that the MSIP Order did not apply retroactively to unwind the Agreements does not "violate our most basic notions of morality and justice." *Telenor*, 584 F.3d at 411.

Accordingly, the district court did not err in confirming the Awards and in denying KT's petitions to vacate the Awards.

\*   \*   \*

We have considered KT's remaining arguments and find them to be without merit. For the reasons set forth above, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit